**MERIDIAN HOMES CORPORATION,**
Plaintiff,

v.

**NICHOLAS W. PRASSAS &
COMPANY, Defendant.**

No. 80 C 12.

United States District Court,
N. D. Illinois, E. D.

March 9, 1981.

---

Stuart Smith, Wexler, Siegel & Shaw, Ltd., Chicago, Ill., for plaintiff.

Richard J. Brennan, Winston & Strawn, Chicago, Ill., for defendant.

Phillip E. Couri, Couri & Economos, Chicago, Ill., for intervenors.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Meridian Homes Corporation ("Meridian") brings this action against Nicholas W. Prassas & Company ("N. Prassas") for the termination of a real estate joint venture. In a memorandum opinion and order dated December 30, 1980 (the "Opinion") this Court granted Meridian's motion for summary judgment in part, permitting termination of the separate joint venture the Court found to exist covering the portion of the real estate developed as a shopping center. Jerome R. Prassas and Philip G. Prassas ("Intervenors") have petitioned for leave to intervene in this action pursuant to Fed.R. Civ.P. ("Rule") 24.[1] For the reasons stated in this memorandum opinion and order, Intervenors' petition is denied.

When the agreement that ultimately gave rise to this litigation (the "Agreement") was entered into April 25, 1961 N. Prassas' corporate name was George W. Prassas & Company.[2] It was then a closely held corporation with two principal shareholders, George W. Prassas and Nicholas W. Prassas. After George's death his testamentary trust ("G. Prassas Trust") entered into an August 12, 1974 agreement (the "1974 agreement") with N. Prassas under which:

1. N. Prassas acquired the G. Prassas Trust shares in an exchange intended to constitute a partial liquidation for Internal Revenue Code purposes;

2. in that exchange N. Prassas distributed certain property interests to G. Prassas Trust, including an interest (the precise nature of which is in dispute and controls the disposition of this motion) relating to the Agreement and the real estate that was its subject matter; and

3. the corporate name was changed to its present form.

In 1978 the G. Prassas Trust terminated and its assets were distributed to its two beneficiaries, Intervenors.

Intervenors contend that as a result of what they assert is a one-half interest in the joint venture they must be permitted to intervene in this action. Rule 24(a) provides:

Upon timely application anyone shall be permitted to intervene in an action ... (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

Intervenors fail to meet that "intervention of right" test from each of several points of view.

1. Intervenors have in any event confirmed their concurrence in the Court's rulings reflected in the Opinion. As their reply memorandum states:

This Court's Memorandum Opinion and Order of December 30, 1980 has made moot the issue of the nature of Intervenors' interest in the Shopping Center. Intervenors feel that it is in the best interest of all parties to proceed with the sale of said shopping center. They represent to this Court that they will impose no further objection to the accomplishment of that goal.

2. Alexander Construction Company was the other original joint venturer. As the Opinion held, Meridian has now succeeded to the Alexander interest and to Alexander's status as joint venturer.

■ Subparagraph 1(d) of the 1974 agreement distributed to Intervenors' predecessor "an undivided one-half of [N. Prassas'] rights and interests in and with respect to Hampton Park Terrace Shopping Center, Romeoville, Illinois. . . ." Any possible doubt as to the nature of the interest so transferred was eliminated by the final two sentences of Paragraph 1 of that agreement:

> If any of the interests of [N. Prassas] referred to in subparagraphs (b) through (g) above is a partnership interest [that is true of the interest in suit here, the law of partnerships and joint ventures being identical in all respects relevant for current purposes], an undivided one-half of such partnership interest shall be deemed to have been assigned by [N. Prassas] to you but you shall not thereby become a partner of such partnership. The relationship between [N. Prassas] and you shall not be one of partnership.[3]

By operation of law as well as the plainly expressed intention of the parties, G. Prassas Trust thus obtained (and Intervenors have succeeded to) only a right to half of the *profits* to which N. Prassas was entitled; they did *not* themselves become joint venturers. Ill.Rev.Stat. ch. 106½, § 27(1) ("Section 27(1)").[4]

■ To translate Intervenors' status in terms of Rule 24(a), they do not properly "claim an interest relating to the property or transaction which is the subject of the action"—that is, to the joint venture itself. Or focusing on another phase of the Rule, though the outcome of this action will of course *affect* Intervenors, it will not "impair or impede [their] ability to protect [their] interest"—that is, the interest in receiving a share of "the profits to which [N. Prassas] would otherwise be entitled" (the language of Section 27(1)).[5] Or from the final perspective of the Rule, Intervenors' "interest [the interest in maximizing their share of joint venture profits] is adequately represented by existing parties [that is, N. Prassas]." [6]

In intervention terms, even one of those three strikes would be out—and all three most certainly are. Intervenors' lack of status as joint venturers is fatal to their asserted right to intervene. Indeed that conclusion is underscored by some of the types of relief they seek in their proposed complaint in intervention:

(1) an accounting,

---

**3.** Consistent with that provision, Subparagraph 1(d)(ii) gave Intervenors' predecessor only "an undivided one-half of [N. Prassas'] rights under [the Agreement] *to receive monies* pursuant to Sections 5, 6(b), 7, 8 and 9 of such Agreement" (emphasis added). It did *not* purport to assign any right as a *party* to the Agreement or to the joint venture created by the Agreement.

**4.** Intervenors argue that Nicholas Prassas indicated in a deposition, taken in the state court proceeding referred to later in this opinion, that Intervenors are *partners* in a Glen Ellyn property and therefore may be partners in this joint venture. Subsequent questioning in the same deposition made it clear that as to the property and the joint venture involved in this action, Prassas was asked for his *legal conclusion* as to the effect of the 1974 agreement and that he specifically rejected the proposition Intervenors assert here ("I know that I did not give any of the interest of the joint venture when I gave the boys [Intervenors] their interest. I gave them an economic interest. . . ."). In all events such deposition testimony could not override the plain meaning of the 1974 Agreement and Meridian's rights (confirmed by Section 27(1)) not to have an unwanted partner foisted on it.

**5.** Neither Intervenors nor either party to this action (both oppose the petition for leave to intervene) has offered any relevant authority supporting their respective positions. That paucity of authority is not surprising, given the plain language of both Rule 24 and Section 27(1), the fact that this issue is likely to arise only in diversity cases, the further fact that partnerships do not often involve partners presenting the complete diversity necessary for federal jurisdiction and the final fact that state rules as to intervention do not necessarily parallel Rule 24. See however the discussion in *Dixon v. American Industrial Leasing Co.*, 157 W.Va. 735, 205 S.E.2d 4, 7–9 (1974), which dealt with a comparable state rule and is entirely consistent with the analysis in the text of this opinion.

**6.** Meridian and N. Prassas are vigorous adversaries and more than adequately represent the respective opposing positions and interests. *See United States v. Board of School Commissioners of the City of Indianapolis*, 466 F.2d 573, 575 (7th Cir. 1972).

(2) appointment of an accountant to examine the books and records to provide an accounting for Intervenors' benefit,

(3) a court-ordered dissolution of the joint venture and

(4) most significant, a court-ordered total change in management: injunction against any N. Prassas "extraordinary" expenditures *without Intervenors' prior written approval,* ouster of N. Prassas from management and appointment of a receiver.

■ Section 27(1) is designed to protect a partner against being forced to deal directly with a stranger whom it has not selected as a partner (with all the two-way principal-and-agent fiduciary obligations of that relationship), but to whom a fellow partner has assigned a money interest. Under Section 27(1) Intervenors:

(1) are not entitled to an accounting,

(2) are not entitled to inspect the records,

(3) cannot demand or reject a dissolution and

(4) again most significant, cannot "interfere in the management or administration of the [joint venture] business or affairs."

Under the 1974 agreement and Section 27(1) Intervenors' predecessor has chosen to look to N. Prassas alone, and not to the joint venture, for enforcement of its rights. Intervenors have pursued that route by filing a still-pending lawsuit in the Circuit Court of Cook County (Chancery Case No. 77 CH 5799). Intervention in this action would proliferate its issues in an impermissible manner and is not called for by Rule 24(a).

■ Although not specifically raised by Intervenors, this Court also finds permissive intervention under Rule 24(b) inappropriate. Intervenors' state court action will permit a full adjudication of their rights. There is no need further to complicate or delay this action by the interjection of new parties and an entirely new set of claims.

*Conclusion*

Intervenors' petition for leave to intervene pursuant to Rule 24 is denied. Leave to intervene is not granted.