**NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., Plaintiff,**

v.

**CONTINENTAL ILLINOIS CORPORATION, et al., Defendants.**

**HARBOR INSURANCE COMPANY and Allstate Insurance Company, Plaintiffs,**

v.

**CONTINENTAL ILLINOIS CORPORATION, et al., Defendants.**

**Nos. 85 C 7080, 85 C 7081.**

United States District Court, N.D. Illinois, E.D.

June 17, 1986.

James G. Hiering, Dennis C. Waldon, Keck, Mahin & Cate, Chicago, Ill., for plaintiff.

Theodore Boundas, Michael Tone, James Skarzynski, Peterson, Ross, Schloerb & Seidel, Chicago, Ill., for intervenors.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Harbor Insurance Company ("Harbor"), Allstate Insurance Company ("Allstate") and National Union Fire Insurance Company of Pittsburgh, Pa. ("National Union") have sued Continental Illinois Corporation ("CIC"), its subsidiary Continental Illinois National Bank and Trust Company of Chicago ("Bank")[1] and a host of other defendants, seeking to avoid liability under the directors' and officers' ("D & O") policies plaintiffs had issued to CIC.[2] First State

Underwriters Agency of New England Reinsurance Corporation ("First State"), an issuer of excess D & O policies to CIC, has asked leave to intervene as an additional party plaintiff. Continental Casualty Company ("CNA") has just filed a like motion, adopting First State's memoranda (CNA is represented by the same counsel as First State). For the reasons stated in this memorandum opinion and order, both motions to intervene are denied.

Fed.R.Civ.P. ("Rule") 24(a) defines the conditions for intervention as of right, conditions summarized in these terms in *Meridian Homes Corp. v. Nicholas W. Prassas & Co.*, 683 F.2d 201, 203 (7th Cir. 1982):

> (1) timely application; (2) an interest relating to the subject matter of the action; (3) potential impairment, as a practical matter, of that interest by the disposition of the action, and (4) lack of adequate representation of the interest by the existing parties to the action.

Any proposed intervenor must establish *each* of those requirements—intervention is a game in which *one* strike is out (*id.* at 205).

### Interest Relating to the Subject Matter

There is no question First State and CNA possess the second *Meridian Homes* ingredient. All terms and conditions of their "following forms" of D & O policy are identical to those of Harbor's primary policy (see both the policy terms and First State Complaint ¶ 7). They necessarily have a vital interest in the subject matter of the actions: whether or not D & O coverage exists for some or all of the claims being asserted against Continental's officers and directors in underlying securities litigation, or whether the Harbor, Allstate and National Union D & O policies may be fully rescinded (in which event

---

1. CIC and Bank are collectively called "Continental."

2. These actions, filed (as the case numbers indicate) in August 1985, were originally assigned to the calendar of this Court's colleague Honorable Nicholas Bua. Over a period of many months, Judge Bua sought to settle the cases, but those efforts failed. Then, when Judge Bua was re-quired to disqualify himself under 28 U.S.C. § 455, the cases found their way to this Court's calendar via mesne reassignments (three other judges also having disqualified themselves en route)—encumbered with a host of pending motions, some fully briefed and others in the briefing process. This opinion is the first to treat with any of those motions.

First State and CNA would automatically be freed of liability).

### Timeliness

■ There is however a serious question whether First State and CNA have acted swiftly enough. This Court has just requested and received Rule 26(f) submissions from the many litigants already in the battle,[3] submissions that demonstrate graphically the procedural problems created by the substantial amount of discovery that has already taken place here or is being adopted from the related underlying securities lawsuits pending before two other judges of this District Court. Those problems, rendered difficult enough by the fact Harbor, Allstate and National Union were not originally parties to those related cases, would be multiplied by First State's and CNA's late entry into the fray here.

Lack of timeliness alone might serve as a predicate for denial of intervention (remember the absence of any of the Rule 24(a) elements is fatal). But that factor is really a judgment call, and if the other three elements were clearly present a district judge could well exercise discretion in favor of a requested intervention under Rule 24(b). See the tendency toward the liberal grant of even Rule 24(a) intervention exemplified in *Lake Investors Development Group, Inc. v. Egidi Development Group,* 715 F.2d 1256 (7th Cir.1983).[4] This opinion therefore turns to the other requisites, on each of which First State and CNA fail utterly.

### Impairment of Intervenors' Interest

There is no way in which the proposed intervenors' interest can be *impaired* by this litigation. First State Mem. 6 is worth quoting in full, for it carries its own obvious death warrant:

> It is beyond reasonable dispute that the Court's decision as to whether the underlying carriers, including the original plaintiffs Harbor and Allstate, are entitled to a declaratory judgment rescinding their policies or declaring that their policies do not afford coverage for the claims in question will significantly affect First State's interests under its "following form" excess policy. Should the Court decide that the underlying carriers are entitled to such relief but not grant First State similar relief due to its absence as a party, First State's interest would be impaired. Because of this possible "impairment" of First State's interests, First State's Motion for intervention of right is appropriate.

That statement, which mistakes the *existence* of an interest for its *impairment*, is utter nonsense. If Harbor, Allstate and National Union *win,* the operation of collateral estoppel (offensive or defensive, depending on who would institute any hypothetical later actions to which First State and CNA were parties) would give First State and CNA the full benefit of that victory. See, e.g., *Raper v. Hazelett & Erdal,* 114 Ill.App.3d 649, 652, 70 Ill.Dec. 394, 396–97, 449 N.E.2d 268, 270–71 (1st Dist.1983).[5] And if Harbor, Allstate and National Union *lose,* elementary principles of due process—embodied in the principles of res judicata and collateral estoppel, because First State and CNA would be neither parties nor privies to the current ac-

---

**3.** Lest the text statement of logistical difficulties be considered hyperbolic, it is worth attaching a copy of the service list annexed to CNA's motion. That list reflects the courtroom-filling number of law firms already in these actions.

**4.** This Court was both affirmed in *Meridian Homes* and reversed in *Lake Investors.* Though sufficiently unregenerate to view the Court of Appeals as having erred in the latter case, this Court must of course follow that decision. But nothing in *Lake Investors* is inconsistent with the analysis in this opinion or points to a different result. Indeed, *Lake Investors* specifically cited to and approved *Meridian Homes,* stressing that in the latter case the original litigant was not competing with the intervenor over the subject matter of the litigation (as the Court of Appeals thought was true in *Lake Investors,* 715 F.2d at 1259 n. 4, 1261). In that respect these lawsuits plainly parallel *Meridian Homes* and not *Lake Investors.*

**5.** Neither side has discussed choice-of-law principles. In determining issue-preclusion (collateral estoppel) or claim-preclusion (res judicata) effects of a first court's decision, the second court must afford the same faith and credit that

tions—mean First State and CNA would lose nothing. *Hedlund v. Miner,* 395 Ill. 217, 229–30, 69 N.E.2d 862, 868 (1946); *Shimkus v. Board of Review of Illinois Department of Labor,* 117 Ill.App.3d 826, 830, 73 Ill.Dec. 292, 294, 454 N.E.2d 36, 38 (1st Dist.1983).

That same line of analysis informed our Court of Appeals' decision in *Meridian Homes,* 683 F.2d at 204 (citations omitted) (emphasis in original):

> The existence of "impairment" depends on whether the decision of a legal question involved in the action would as a practical matter foreclose rights of the proposed intervenors in a subsequent proceeding.... Potential foreclosure is measured by the general standards of stare decisis.... Although a decision on the status of the joint venture may *affect* the interest of the brothers, it would not have any preclusive effect on their asserted claims against the Prassas Company and would not, therefore, impair their ability to protect their interest.

See also this Court's discussion of the same subject in the *Meridian Homes* opinion later affirmed by the Court of Appeals, 89 F.R.D. 552, 554 (N.D.Ill.1981). First State's initial claim of a risk of impairment was thus clearly empty.

Understandably First State shifted ground entirely in its Reply Memorandum on the current motion. This time it points to an argument that it is trying to advance by its own complaint, but that it acknowledges is not an ingredient of the present actions (First State R. Mem. 4):

> Absent intervention First State's interests would clearly be impaired because First State, unlike Plaintiffs, is seeking a judicial declaration that First State is not obligated to pay claims or demands under its policy unless and until the under-

lying carriers have admitted liability or been held liable. Plaintiffs' Opposition to the Motion for Intervention fails to address this issue, thereby conceding that no cogent argument exists which undermines this clear, yet distinct interest of First State, which has not yet been advanced by plaintiffs.

In precisely the same vein, CNA R. Mem. 2 urges:

> CNA's complaint-in-intervention presents at least three issues that will not be litigated by the present plaintiffs.

True enough, all those additional issues will not have been decided by this Court if First State and CNA are not allowed into the present lawsuits. But what First State and CNA have really demonstrated by their own argument is that their proposed claims are *not* part of the existing "subject matter of the action" and thus necessarily cannot be "impaired" by the result here. Absent First State and CNA as parties to the litigation, this Court's decision will of course be silent on the declarations sought by them. Failure of a litigant to derive a wholly new advantage not involved in existing litigation (in this case, the failure to obtain a declaration of claimed rights not now at issue in these lawsuits) is by definition not an "impairment" of an interest *relating to the subject matter of the action.*

### Adequacy of Representation

That last point also spells defeat on the final condition First State and CNA must satisfy. To the extent they have an interest in what is *really* the subject matter of the actions as they now exist, First State and CNA have completely common cause with Harbor, Allstate and National Union. What advances the interests of the present plaintiffs automatically advances the inter-

---

decision would be given by the courts of the rendering jurisdiction. *Migra v. Warren City School District Board of Education,* 465 U.S. 75, 84–85, 104 S.Ct. 892, 897–98, 79 L.Ed.2d 56 (1984). Here this District Court will be the rendering jurisdiction, and in diversity cases such as these that would appear to call Illinois collateral estoppel and res judicata law into play. Moreover, Harbor, Allstate and National Union have cited to Illinois law without objec-

tion or dispute from First State and CNA, a circumstance that allows this Court to treat the parties as having stipulated to the applicability of such law. *National Ass'n of Sporting Goods Wholesalers, Inc. v. F.T.L. Marketing Corp.,* 779 F.2d 1281, 1284–85 (7th Cir.1985). In any event, the issue is an academic one, for Illinois law involves no startling variations on universally applicable principles in this area.

ests of First State and CNA. *Meridian Homes*, 683 F.2d at 205. Harbor, Allstate and National Union have a huge financial stake in succeeding here, and there can be no whisper that they will represent the interests shared by First State and CNA less than adequately.

Here too, a desire to enter a wholly new battlefield on the part of the intervenors, a battlefield not shared by the existing plaintiffs, does not betoken any inadequacy of representation by plaintiffs of "an interest relating to the subject matter of the[se] action[s]." First State and CNA have failed the final test.

### Conclusion

These lawsuits are already complex and bid fair to become unmanageable. Addition of new litigants and new counsel tends to increase the difficulties geometrically rather than arithmetically. No justification exists for distorting Rule 24(a). First State and CNA are denied intervention.